**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:   SEAN MICHAEL O'BRIEN
    and NICOLE MARIE O'BRIEN,           Chapter 13
                                                    Case No. 03-17448 (RTL)
      Debtors.
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X
SEAN MICHAEL O'BRIEN and
  NICOLE MARIE O'BRIEN,

                                                    Adversary Proceeding
        Plaintiffs,           Case No.  08-1676 (RTL)
    v.

FREDERICK CLEVELAND,
CLEVELAND DEVELOPMENT, LLC.,
   and WILLIAM E. GAHWYLER,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**

**APPEARANCES:**

PINILISHALPERN, LLP
Gabriel H. Halpern, Esq.
Attorneys for Plaintiffs/Debtors

DUANE MORRIS LLP
Eric R. Breslin, Esq.
Gia G. Incardone, Esq.
Attorneys for Defendants Cleveland
    and Cleveland Development, LLC

WILLIAM E. GAHWYLER, Jr., Esq.
Pro Se

**RAYMOND T. LYONS, U.S.B.J.**

## INTRODUCTION

This court entered an order on February 2, 2010, accompanied by an opinion, *O'Brien v. Cleveland (In re O'Brien)*, 423 B.R. 477 (Bankr. D.N.J. 2010), finding Frederick Cleveland and William Gahwyler ("Defendants") jointly liable to Sean and Nicole O'Brien ("Plaintiffs") for violation of several consumer protection statutes in connection with a mortgage foreclosure rescue scam. The court found that Defendants' actions were fraudulent and constituted an unconscionable commercial practice in violation of New Jersey's Consumer Fraud Act ("CFA"). Furthermore, the sale/leaseback was found to be a financing transaction subject to the Truth In Lending Act ("TILA") as amended by the Home Ownership and Equity Protection Act ("HOEPA") as well as the New Jersey Home Ownership Security Act of 2002 ("HOSA").

Plaintiffs were permitted to submit a certification of attorneys' fees and costs to be awarded for violation of the New Jersey Consumer Fraud Act, the Truth in Lending Act and the New Jersey Home Ownership Security Act of 2002, to which Defendants were permitted to object. A hearing on punitive damages was scheduled for April 23, 2010 for violation of HOSA and for malicious conduct associated with the fraud claim. The parties agreed to have the matter heard on the papers.

## JURISDICTION

This court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and the Standing Order of Reference by the United States District Court for the District of New Jersey dated July 23, 1984, referring all proceedings arising in or related to a case under Title 11 of the United States Code to the bankruptcy court. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(D) (obtaining credit), (M) (use or lease of property)

(N) (sale of property) and (O) (other proceedings affecting the liquidation of assets of the estate).

## DISCUSSION

**Punitive Damages**

The Defendants were found liable to the Plaintiffs for common law fraud in connection with a mortgage foreclosure rescue scam. Plaintiffs were awarded $116,791.49 in actual damages. Under New Jersey law, Defendants are also subject to punitive damages. *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 368 (N.J. 1997). Furthermore, the Defendants are subject to punitive damages based on the court's finding a violation of HOSA. N.J. STAT. ANN. § 46:10B-29(b)(1).

"The purpose of punitive damages is to punish a wrongdoer and deter others." *Gennari*, 691 A.2d at 368. In an action for common-law fraud, punitive damages may only be imposed when the defendant's conduct is "willfully and wantonly reckless or malicious." *Id.* The New Jersey Supreme Court has identified several relevant factors to consider when determining entitlement to punitive damages and the appropriate amount of such an award -

> In addition to bearing a reasonable relationship to actual injury, the amount of punitive damages should account for the profitability of the defendant's . . . misconduct, the plaintiff's litigation expenses, the punishment the defendant will probably receive from other sources, the defendant's financial condition, and the effect on its condition of a judgment for the plaintiff.

*Herman v. Sunshine Chemical Specialties, Inc.*, 627 A.2d 1081, 1086 (N.J. 1993) (citation omitted). In the instant case, while the Defendants advance various arguments in opposition to an award of punitive damages, the court is particularly concerned with the Defendants' financial condition. It is part of the Plaintiffs' burden of proof to establish the "ability of the wrongdoer to pay punitives." *Id.* The court should consider net worth but place more emphasis on income.

3

*Id.* at 1089-90.

The Plaintiffs deposed both Defendants in an attempt to ascertain their respective financial conditions. Unable to discover any significant assets or income, the Plaintiffs submit that Mr. Gahwyler is "secreting assets" and that Mr. Cleveland's testimony is simply not believable. In the absence of any evidence to back up these suspicions, the court is not convinced that the Plaintiffs have met their burden on this issue and declines to award any punitive damages to the Plaintiffs.

Additionally, the court is satisfied that the Defendants have been adequately punished for their wrongdoing, particularly in light of the treble damages awarded Plaintiffs under the New Jersey Consumer Fraud Act. Treble damages awarded under the Consumer Fraud Act are punitive in nature. *See Fineman v. Armstrong World Industries,* Inc., 980 F.2d 171, 219 (3d Cir. 1992) ("Although treble damages are not solely punitive in character, they do serve a penal and deterrent function in addition to a remedial one, and as a consequence do overlap somewhat with punitive damages."); *Lettenmaier v. Lube Connection, Inc.*, 741 A.2d 591, 593 (N.J. 1999) (finding that among the purposes of the CFA is to punish the wrongdoer through the award of treble damages); *St. James v. Future Finance*, 776 A.2d 849, 867-68 (N.J. Super. Ct. App. Div. 2001) (holding that a defendant cannot be subjected to treble damages under state RICO statute and punitive damages for breach of fiduciary duty claim because both claims arose from the same course of conduct). Furthermore, the treble damages in this case are sufficient to deter future wrongdoing by these defendants and others.

**Attorneys' Fees**

The Defendants were found liable to Plaintiffs pursuant to the New Jersey Consumer

Fraud Act, which prohibits the use of any unconscionable commercial practice, deception or fraud. N.J. STAT. ANN. § 56:8-2. Remedies for violation of the CFA include treble damages, reasonable attorneys' fees and costs. N.J. STAT. ANN. § 56:8-19. These remedies are mandatory. *Garcia v. General Motors Corp.*, 910 F. Supp. 160, 166 (D.N.J. 1995); *see also Skeer v. EMK Motors, Inc.*, 455 A.2d 508, 510-14 (N.J. Super. Ct. App. Div. 1982) (noting that when the legislature uses the word "shall" a presumption arises that application is mandatory). TILA and HOSA violations also provide for fee shifting. Upon successful prosecution of a violation of the Truth in Lending Act, Section 1640 authorizes costs and reasonable attorneys' fees. 15 U.S.C. § 1640(a)(3). Remedies for a material violation of HOSA include attorneys' fees and costs. N.J. STAT. ANN. § 46:10B-29(c).

Plaintiffs' attorneys submitted a declaration in support of fees in the net amount of $33,932.50 for 81.5 hours of work and $627.50 in costs. The lodestar calculation is the "number of hours reasonably expended by the successful party's counsel in the litigation, multiplied by a reasonable hourly rate." *Litton Industries, Inc. v. IMO Industries, Inc.*, 982 A.2d 420, 428 (N.J. 2009) (citing *Furst v. Einstein Moomjy, Inc.*, 860 A.2d 435 (N.J. 2004)). New Jersey Rule of Professional Conduct 1.5 sets out the factors a court should consider in determining reasonable attorneys' fees:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

N.J. RULES OF PROF'L CONDUCT R 1.5 (2010). This case involved complicated issues of state and federal consumer protection laws and the court is satisfied with the qualifications of Mr. Halpern and his staff. Neither the court nor the Defendants question the reasonableness of the net fees.

The Plaintiffs urge the court to enhance their attorneys' fees to the tune of fifty percent. The basis for the enhancement is the novelty of the issues and the fact that Counsel took the case on "primarily" a contingent fee basis. Admittedly, there was a $10,000 retainer paid by the Plaintiffs and split equally between Mr. Halpern's firm and the Plaintiffs' former counsel. In *Rendine v. Pantzer*, 691 A.2d 1202 (N.J. 1995), the New Jersey Supreme Court "authorize[d] the award of contingency enhancements based on the risk of nonpayment." 661 A.2d at 1229. The court reasoned that a fee "awarded under a fee-shifting statue cannot be 'reasonable' unless the lodestar, calculated as if the attorney's compensation were guaranteed irrespective of result, is adjusted to reflect the actual risk that the attorney will not receive payment if the suit does not succeed." 661 A.2d at 1228. This rule is limited by certain standards set forth by the court that "require a relationship between the amount of the enhancement awarded and the extent of the risk of nonpayment assumed by counsel for the prevailing party." *Id.* at 1228-29. Factors the court should consider when determining the amount of an enhancement include: mitigation of the risk of nonpayment, such as receiving part of their hourly fee regardless of the result; if there are substantial damages at stake; and the likelihood of success. *Id.* at 1229-30.

Federal fee shifting statutes do not permit enhancement of the lodestar fee on the basis of contingency. *See City of Burlington v. Dague*, 505 U.S. 557, 567 (1992) (applying this holding

to the Solid Waste Disposal Act and Clean Water Act); *Rendine*, 661 A.2d at 1223 (interpreting the holding of *Dague* to apply to all federal fee-shifting statutes).

The Defendants argue that Mr. Halpern was not paid on a contingent basis but rather was paid a flat fee. In Mr. Halpern's declaration in support of counsel fees submitted on January 25, 2010, he declared he was entitled to fee enhancement based on "the complexity of the issues, the novelty of the issues presented and the results obtained for the Plaintiffs." Counsel did not state that he was paid on a contingent basis. In Mr. Halpern's memorandum docketed May 7, 2010, he adds, "counsel took this case on primarily a contingency because of the fee shifting." In light of this discrepancy, and also considering that the attorneys' fees for the TILA and HOEPA claims, an extremely large and important part of this case, do not permit enhancement, the court finds that the net fees are sufficiently reasonable and therefore declines to enhance the award.

## CONCLUSION

No punitive damages will be awarded in this case, in large part because the Defendants' ability to pay such damages has not been adequately established by the Plaintiffs. Additionally, the Defendants have been adequately punished and the damages are significant enough to deter future misconduct. Attorneys' fees will be awarded as requested with no enhancement.

Dated: May 17, 2010                      _____/s/ *Raymond T. Lyons*_____
                                          **Raymond T. Lyons**
                                          **United States Bankruptcy Judge**